O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DUCK DIVE, a California limited partnership,<br><br>Plaintiff,<br><br>v.<br><br>MICHAELINE HEYDARI, individually and doing business as THE DUCK DIVE and DUCK DIVE GASTROPUB, INC; DUCK DIVE GASTROPUB, INC., a California corporation, doing business as DUCK DIVE GASTROPUB or DUCK DIVE GASTROPUB MALIBU,<br><br>Defendants. | Case No. CV 13-07791 DDP (SHx)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>[Dkt. No. 19] |

Presently before the court is Plaintiff Duck Dive's Motion for Preliminary Injunction. Having considered the submissions of the parties and heard oral argument, the court grants the motion and adopts the following order.

**I.   Background**

In March 2012, Plaintiff Duck Dive, a limited partnership, opened an eponymous "gastropub," essentially a bar with high

quality food offerings, in San Diego, California. (Complaint ¶ 15-16, 18.) Duck Dive is located very close to San Diego's Pacific Beach, and derives its name from the surfing term "duck dive," a method of diving beneath a breaking wave with a surfboard. (Complaint ¶ 15.) Duck Dive also uses a logo displaying the text "Duck Dive" alongside a graphic of a woman performing a duck dive. (Declaration of Todd Winn ¶5; Mot. at 2.) Duck Dive sells shirts and hats bearing the logo to local customers and beach tourists. (Winn Decl. ¶ 6.) Duck Dive has been the subject of favorable media coverage in local outlets such as the San Diego Reader and more distant sources, such as the Los Angeles-area Government Center Gazette and Van Nuys News Press. (Mot. Exhs. 3, 4.) Duck Dive has filed trademark registrations for the "Duck Dive" name and logo, but has not yet received the registrations. (Compl. ¶ 19.)

In May 2013, Defendants opened the "Duck Dive Gastropub" in Malibu, California, a beachside community near Los Angeles. Defendants attempted to register the name "The Duck Dive," but later abandoned that effort. (Compl. ¶ 23; Mot. Ex. 11.) Defendants continue to pursue efforts to register the name "Duck Dive Gastropub Malibu," and currently operate an establishment under that name. (Mot. Ex. 11.)

After sending Defendants a cease and desist letter, to no avail, Plaintiff filed the instant action, alleging trademark infringement, unfair competition, unfair business practices, and unjust enrichment. Plaintiff now seeks a preliminary injunction enjoining Defendants from using the name "Duck Dive" in connection with bar or restaurant services.

///

**II.  Legal Standard**

A private party seeking a preliminary injunction must show (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest.  <u>Winter v. Natural Res. Defense Counsel</u>, 555 U.S. 7, 20 (2008).  Preliminary relief may be warranted where a party (1) shows a combination of probable success on the merits and the possibility of irreparable harm, or (2) raises serious questions and the balance of hardships tips in favor of an injunction.  See <u>Arcamuzi v. Continental Air Lines, Inc.</u>, 819 F.2d 935, 937 (9th Cir. 1987).  "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases."  <u>Id</u>.  Under both formulations, the party must demonstrate a "fair chance of success on the merits" and a "significant threat of irreparable injury."[1]  <u>Id</u>.

**III. Discussion**

   A.   Irreparable Harm

Defendants first argue that Plaintiff has not demonstrated a likelihood of irreparable harm, and that irreparable harm cannot be presumed in trademark infringement cases.  Historically, a demonstration of likely success on the merits of a trademark claim gave rise to a presumption of irreparable injury.  See <u>Marlyn</u>

---

[1] Even under the "serious interests" sliding scale test, a plaintiff must satisfy the four <u>Winter</u> factors and demonstrate "that there is a likelihood of irreparable injury and that the injunction is in the public interest."  <u>Alliance for the Wild Rockies v. Cottrell</u>, 632 F.3d 1127, 1135 (9th Cir. 2011).

1 Nutraceticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 877
2 (9th Cir. 2009). In the wake of Winter, the Ninth Circuit then
3 held that in copyright cases, a presumption of irreparable harm
4 could no longer follow from a finding of likelihood of success on
5 the merits. Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.,
6 654 F.3d 989, 998 (9th Cir. 2011). The Flexible Lifeline court did
7 not, however, address the viability of the presumption in the
8 trademark context, and the Ninth Circuit has yet to do so. In the
9 absence of any binding authority, districts in this court have
10 taken conflicting approaches. Compare, e.g., BoomerangIt, Inc. v.
11 ID Armor, Inc., No. 12-CV-0920 EJD, 2012 WL 2368466 at *4 (N.D.
12 Cal. Jun. 21, 2012) with Otter Prods., LLC v. Berrios, No. CV 13-
13 4384 RSWL, 2013 WL 5575070 at *11 (C.D. Cal. Oct. 10, 2013);
14 Nordstrom, Inc. v. NoMoreRack Retail Group, Inc., No. C12-1853-RSM,
15 2013 WL 1196948 at *13 (W.D. Wash. Mar. 25, 2013).

16 Here, the court need take no position on the existence of a
17 presumption because Plaintiff has presented evidence of irreparable
18 harm. As discussed in further detail below, press reports have
19 mistakenly associated Plaintiff's establishment with Defendants',
20 and multiple patrons have confused one gastropub for the other.
21 While Defendants are correct that monetary losses alone do not
22 constitute irreparable injury, harm to a business' reputation and
23 goodwill and loss of prospective customers do qualify as
24 irreparable damage. Stuhlbarg Int'l Sales Co. v. John D. Brush and
25 Co., Inc., 240 F.3d 832, 841 (9th Cir. 2001); MySpace, Inc. v.
26 Wallace, 498 F.Supp.2d 1293, 1305 (C.D. Cal. 2007).
27 ///
28 ///

B.  Likelihood of Success

To prevail on a trademark claim, a plaintiff must show that it has some protectable interest in the mark. <u>Apllied Info. Sciences Corp. v. eBAY, Inc.</u>, 511 F.3d 966, 696 (9th Cir. 2007).  Beyond ownership, the "core element" of a trademark infringement claim is the likelihood that the similarity of the marks will confuse consumers as to the source of goods or services. <u>Freecycle Network, Inc. v. Oey</u>, 505 F.3d 898, 902 (9th Cir. 2007). Relevant factors include the strength of the mark, proximity of the goods, similarity of the marks, evidence of actual confusion, marketing channels used, degree of care likely to be exercised by consumers, defendant's intent, and likelihood of expansion of product lines. <u>AMF Inc. v. Sleekcraft Boats</u>, 599 F.2d 941, 348-49 (9th Cir. 1979).

    1.  Ownership of the Mark

Defendants suggest, without any citation to authority, that Plaintiff has no protectable interest in the "Duck Dive" mark because other businesses around the country, including musicians, housing providers, artists, and restauranteurs as far away as North Carolina use the term "Duck Dive" in some form. (Opp. at 7-8.)

The test of trademark ownership is priority of use. <u>Sengoku Works Ltd. v. RMC Int'l, Ltd.</u>, 96 F.3d 1217 (9th Cir. 1996). "The first to use a mark is deemed the 'senior' user and has the right to enjoin 'junior' users from using confusingly similar marks <u>in the same industry and market</u> or within the senior user's <u>natural zone of expansion</u>." <u>Brookfield Commc'ns. Inc. V. West Coast Entm't Corp.</u>, 174 F.3d 1036, 1047 (9th Cir. 1999) (emphases added). The fact that others may use the term "Duck Dive" with respect to art, clothing, or even food services thousands of miles from Plaintiff's

5

establishment has no bearing on Plaintiff's ability to obtain trademark protection in its industry and market, within which Plaintiff is undisputedly the senior user of the Duck Dive mark. (Winn Decl. ¶ 7.)

2. Likelihood of Confusion

The strength of a trademark depends, in part, on its position on a specturm ranging from generic to arbitrary. <u>Rearden LLC v. Rearden Commerce, Inc.</u>, 683 F.3d 1190, 1211 (9th Cir. 2012). Arbitrary marks consist of words that have no connection with the product. <u>Id.</u> Here, "Duck Dive," a surfing term, has nothing to do with the bar or restaurant services that both Plaintiff and Defendant provide.[2] The mark is, therefore, strong. Defendant does not dispute that its use of "Duck Dive gastropub" is virtually identical to the "Duck Dive" mark Plaintiff seeks to protect in relation to its gastropub.

Defendants argue that consumers are not likely to confuse the two establishments because Plaintiffs operate in San Diego and Defendants' business is in Malibu, near Los Angeles. The court disagrees. While the distance between the two Duck Dives is not insignificant, both are located in popular Southern California beach communities, thus placing Malibu within Plaintiff's zone of natural expansion. Indeed, Plaintiff has submitted evidence that it has considered expanding to the Los Angeles area, where it has

---

[2] While the word "dive" could describe certain downscale bars, Plaintiff does not characterize its establishment as such, nor does the evidence presented suggest that the parties' relatively upscale businesses qualify as dive bars. Indeed, a "dive bar gastropub" would border on the oxymoronic.

already received some media attention. (Winn Decl. ¶ 15; Mot. Ex. 4.)

Lastly, though evidence of actual confusion is not necessary to a finding of likelihood of confusion, evidence of "actual confusion among significant numbers of consumers provides strong support for the likelihood of confusion." <u>Playboy Enters., Inc. v. Netscape Comms. Corp.</u>, 354 F.3d 1020, 1026 (9th Cir. 2004). Though Defendants make unsupported assertions that consumer confusion is unlikely, Plaintiff has presented evidence of actual consumer confusion. Tom Winn, a limited partner of Plaintiff Duck Dive, has declared under penalty of perjury that multiple customers have called Plaintiff's San Diego Duck Dive in the mistaken belief that it is Defendants' Malibu establishment, and that confused customers have placed to-go orders with Plaintiff that are then never picked up. (Winn Decl., ¶ 14.) Furthermore, a Los Angeles-based food blog erroneously reported, even after communicating with Defendants, that Defendants' establishment is Plaintiff's "second location." (Mot. Exs. 10, 11.) These factors weigh heavily in favor of a preliminary finding of likelihood of confusion.

**IV. Conclusion**

For the reasons stated above, Plaintiff's Motion for Preliminary Injunction is GRANTED.

**IT IS HEREBY ORDERED** that Defendants and their employees, servants, agents, affiliates, distributors, dealers, attorneys, successors and/or assigns, and all persons in active concert or participation with any of them, are, pending trial on the merits or until further order of court, preliminarily enjoined from:

7

a. Using "DUCK DIVE" or "DUCK DIVE GASTROPUB" as a trademark, trade name, or service mark for bar/restaurant services, or for the retail and/or internet sale of apparel, or any confusingly similar mark, or any colorable imitations thereof;

b. Using "DUCK DIVE" or "DUCK DIVE GASTROPUB" in any advertisements, media promotions, or in any internet posting containing audio over which Defendants have control, including but not limited to Facebook and Pinterest;

c. Opening any new gastropubs or other commercial corporate locations bearing the name or signage "DUCK DIVE" or "DUCK DIVE GASTROPUB" or any similar mark;

d. Using the mark "DUCK DIVE" or "DUCK DIVE GASTROPUB" inside any new gastropub locations, on displays or otherwise;

e. Selling in any current or new gastropub locations any goods bearing the marks "DUCK DIVE" or "DUCK DIVE GASTROPUB";

f. Advertising or publicizing any current or new gastropubs bearing the name "DUCK DIVE" or "DUCK DIVE GASTROPUB";

g. Performing or allowing any act or thing which may tarnish the distinctive quality of DUCK DIVE's Duck Dive Marks.

Nothing herein shall prevent Defendants from the use of the generic term "Gastropub" by itself; the use of the name "Gastropub" by itself in any advertisements, media promotions, or any internet postings; or the use of the generic term "Gastropub" by itself in

connection with any of the activities described in paragraphs (c) through (g) above.

IT IS SO ORDERED.

Dated: March 27, 2014

DEAN D. PREGERSON
United States District Judge